**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                     **Case No. 00-40087-01**

                                   **04-3428-RDR**

JOHN W. AUTEM,

        Defendant.

_____

**MEMORANDUM AND ORDER**

    This matter is presently before the court upon defendant's <u>pro se</u> motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  Having carefully reviewed the defendant's arguments, the court is now prepared to rule.

I.

    The defendant was convicted on August 24, 2001 by a jury of conspiracy to manufacture in excess of 50 grams of methamphetamine in violation of 21 U.S.C. § 846 (Count 1), attempt to manufacture in excess of 50 grams of methamphetamine in violation of 21 U.S.C. § 841(a) (Count 2), and possession of a listed chemical with intent to manufacture a controlled substance in violation of 21 U.S.C. § 841(d) (Count 3).  The court sentenced the defendant to terms of imprisonment of 240 months on Counts 1 and 2, to be served concurrently, and 87 months on Count 3, to be served concurrently with Counts 1 and 2.  The defendant appealed his convictions and sentence.  The Tenth Circuit Court of Appeals affirmed.  <u>United States v. Autem</u>, 71 Fed.Appx. 804, 2003 WL 21806734 (10th Cir.

2003).   The defendant filed the instant motion on November 18, 2004.

The defendant raises seven claims in his motion.  He contends the government committed violations of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) by withholding certain evidence.  He asserts that the government withheld (1) evidence concerning information provided by Rick Clifton to law enforcement, and (2) several pieces of paper found at his residence by his ex-wife and introduced at trial as Exhibit No. 103.  He further contends the government introduced perjured testimony at trial.  He asserts that Shane Beery, the government's primary witness, and Vicki Souter-Autem, his ex-wife, knowingly testified falsely at trial.  The defendant next claims his Fifth and Sixth Amendment rights were violated because he received ineffective assistance of counsel at trial.  He argues his trial counsel was ineffective because he failed to locate, or even attempt to locate, an important witness for trial.  Finally, the defendant contends he was improperly sentenced for two reasons.  He asserts that the amount of drugs attributed to him was improperly calculated because the determination was based upon "maximum yield."  He also argues that his sentence was improper because the indictment did not allege a specific amount and the jury did not find a specific amount.

## II.

The facts underlying the defendant's convictions were set

forth in the Tenth Circuit's opinion in this case as follows:

Based on information from a confidential informant, the Labette County Sheriff's Department suspected there was a methamphetamine laboratory on Mr. Autem's property. Law enforcement officers searched Mr. Autem's property on two separate occasions and found numerous items associated with methamphetamine manufacturing. The officers also found marijuana. Although the officers initially arrested only Mr. Autem's daughter, they soon after arrested her boyfriend, Shane Beery. Mr. Beery indicated Mr. Autem was involved in the methamphetamine manufacturing. Officers subsequently arrested Mr. Autem.

Mr. Autem's daughter entered into a plea agreement with the government and pled guilty to possession of marijuana. Mr. Beery also entered into a plea agreement and pled guilty to conspiracy to manufacture methamphetamine. In exchange for Mr. Beery's testimony against Mr. Autem and other "substantial assistance," the government agreed to dismiss some of the charges against him, to not bring any additional charges against him, and to recommend he receive a lighter sentence. Mr. Autem denied any involvement in the methamphetamine manufacturing and entered a not guilty plea.

At trial, Mr. Beery testified he met Mr. Autem at Mr. Autem's home and discussed a "more efficient way of manufacturing" methamphetamine using anhydrous ammonia. Mr. Autem wanted to learn this new method. Mr. Autem therefore agreed to supply Mr. Beery with "anhydrous [ammonia] to make more methamphetamines" in exchange for Mr. Beery's instruction on "how to manufacture methamphetamines with anhydrous ammonia." Mr. Autem indicated he could get the anhydrous ammonia "because he owned a farm." He also indicated he could get other supplies like pseudoephedrine from a veterinary supply catalog.

A few weeks later, Mr. Beery manufactured four quarts of methamphetamine oil in a metal outbuilding behind Mr. Autem's home, enough to produce approximately two ounces of methamphetamine. He used materials both he and Mr. Autem provided. Mr. Autem arrived home from work and was present during the crucial stages of the manufacturing process. Mr. Autem indicated he wanted the methamphetamine left as oil because "[h]e knew how to do the last process" of "powder[ing] it out." Prior to Mr. Beery's departure, he and Mr. Autem split the methamphetamine oil between themselves, each taking two jars. Mr. Beery left a propane tank in the outbuilding

3

for Mr. Autem to fill with anhydrous ammonia according to
their agreement.

The government introduced several items of physical
evidence it found in Mr. Autem's outbuilding.  The
government found several precursors, reagents, solvents,
and other supplies used in methamphetamine manufacturing.
One such item was a propane tank that contained anhydrous
ammonia.  In addition, the government found some items
containing traces of methamphetamine, including a jar of
methamphetamine oil.

The government also introduced as evidence items it
found in Mr. Autem's home.  The government found books
describing how to manufacture methamphetamine; veterinary
supply    catalogs    selling    substances    used    in
methamphetamine    manufacturing;    a    catalog    selling
chemistry laboratory equipment similar to items found in
the outbuilding; a receipt for pseudoephedrine from a
veterinary supply company dated approximately two weeks
before   the   alleged   manufacturing;   and   a   list   in   Mr.
Autem's   handwriting   of   chemical   names   and   equipment
commonly used in methamphetamine manufacturing.

Finally, to "show knowledge, absence of mistake, et
cetera," the government introduced evidence that Mr.
Autem   had   a   previous   conviction   for   possession   of
methamphetamine   with   intent   to   sell.    During   the
investigation of Mr. Autem at that time, the government
found recipes for manufacturing methamphetamine at his
home.

71 Fed.Appx. at 805-06 (footnote omitted).

III.

In order to obtain relief under § 2255 on the basis of

constitutional error, the petitioner must establish an error of

constitutional magnitude which had a substantial and injurious

effect or influence on the verdict.  Brecht v. Abrahamson, 507 U.S.

619, 637-38 (1993).  In order to obtain relief on the basis of

nonconstitutional error, the petitioner must show a fundamental

defect in the proceedings resulting in a complete miscarriage of

justice or an error so egregious that it amounted to a violation of

4

due process.  Reed v. Farley, 512 U.S. 339, 353-354 (1994).

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; United States v. Galloway, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995).  To be entitled to an evidentiary hearing, the defendant must allege facts which, if proven, would entitle him to relief.  See Hatch v. Oklahoma, 58 F.3d 1447, 1471 (10th Cir. 1995), cert. denied, 517 U.S. 1235 (1996).  The court finds that a hearing on the defendant's motion is not necessary because the materials already in the record conclusively show that the defendant is not entitled to relief on the asserted claims.

Failure to raise an issue on direct appeal precludes a defendant from later raising the issue in a § 2255 motion, United States v. Baraja-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002), unless the defendant can demonstrate either (1) "cause" for his failure to raise the issue earlier, along with "actual prejudice" as a result, or (2) that he is "actually innocent."  Bousley v. United States, 523 U.S. 614, 622 (1998).  Cause for a procedural default ordinarily turns on whether the defendant "can show that some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).

IV.

The government has suggested the following four claims asserted by the defendant are procedurally barred:  (1) the

5

government withheld several pieces of paper found at his residence
by his ex-wife and introduced at trial as Exhibit No. 103; (2) the
government introduced the perjured testimony of Shane Beery; (3)
his sentence was inaccurate because the amount of drugs attributed
to him was improperly calculated because the determination was
based upon "maximum yield;" and (4) his sentence was improper
because the indictment did not allege a specific amount of drugs
and the jury did not find a specific amount.

The court agrees with the government that these claims are
procedurally barred.  The court finds that the defendant's claims
concerning his sentencing[1] and his claim concerning Exhibit No. 103

_____

[1] The court also finds that the records and files in the case
clearly establish the defendant is not entitled to any relief on
these claims.  The defendant initially suggests that his counsel
was ineffective for failing to challenge the drug quantity
calculations.  Specifically, the defendant asserts his sentence was
"based on a maximum THEORETICAL yield of empty Lithium battery
wrappers, a fact which has been proven repeatedly in the judicial
system to have been the least reliable for calculation."  This
argument lacks factual and legal support.  In order to determine
the quantity of drugs attributable to the defendant, the government
presented evidence concerning theoretical yield and evidence
concerning the quantity actually produced from Shane Beery, the
acknowledged producer of the methamphetamine.  As correctly pointed
out by the government, the jury could have found that the defendant
attempted or conspired to produce 50 grams of methamphetamine based
on Beery's testimony alone, which did not reference theoretical
drug calculations.  In light of this evidence, the court finds no
basis for relief on this claim.
The court also finds no merit to the defendant's other
sentencing claim.  He has suggested that his sentence violated
Apprendi v. New Jersey, 530 U.S. 466 (2000) because (1) the
indictment did not specify a particular quantity of drugs; (2) the
jury did not decide the specific issue of drug quantity; and (3)
the court judicially determined the drug quantity at sentencing.
There is no factual support for any of these contentions.  The

have been procedurally defaulted.  The defendant has failed to show cause why these issues were not raised on direct appeal.  The defendant and his counsel were aware, or should have been aware, of all of them prior to the appeal.  The defendant has offered no explanation, and the court cannot discern any basis for not raising them on direct appeal.  Accordingly, the court finds these issues procedurally barred.

Concerning the final issue of claimed procedural default by the government, the court notes the government only contends that a portion of this claim is barred.  The government argues that defendant's claim that Beery's counsel told the prosecutor that Beery was committing perjury during his testimony is procedurally barred.  The court agrees that this issue, to the extent that it is raised as a separate claim by the defendant, is barred.  The defendant acknowledges that he and his counsel were aware of this information during the trial of the case.  Once again, the defendant has failed to offer any explanation why this issue was not raised on direct appeal.  Thus, this issue is also procedurally barred.

V.

_____

indictment did allege a specific drug quantity, i.e., in excess of 50 grams of methamphetamine, and the jury did find that the defendant produced at least 50 grams of methamphetamine.  Finally, the defendant's sentence was based upon the jury's finding, not upon any calculation of the drug amount by the probation office or the court.  Accordingly, the court finds no factual or legal support for the defendant's <u>Apprendi</u> challenge.

The court shall next turn to the claims made by the defendant concerning the testimony at trial by his ex-wife, Vicki Souter-Autem.  He now contends that she perjured herself when she testified at trial about (1) when she saw the books about methamphetamine manufacturing in her residence; and (2) the origin of the scraps of paper that became Exhibit No. 103.  In support of these contentions, the defendant points to statements made by Souter-Autem to a private investigator in August 2004 and to Johnna Autem, the defendant's daughter, in May 2004.

The Tenth Circuit has held that "a writ of habeas corpus should not be granted upon the grounds that false and perjured testimony was used unless it is shown that it was knowingly used against the defendant by the prosecuting officers in the criminal case." Wild v. Oklahoma, 187 F.2d 409, 410 (10th Cir. 1951); see also McBride v. United States, 446 F.2d 229, 232 (10th Cir. 1971) (applying same requirement in denying motion for relief under 28 U.S.C. § 2255), cert. denied, 405 U.S. 977 (1972).  There is no suggestion by the defendant that the government or its agents knew or had reason to know that any of the testimony offered by Souter-Autem at trial was false or perjured.  Because there is no showing that the government knowingly used false testimony at trial, the defendant is not entitled to relief on this claim.

Even if we were to analyze the evidence supporting this claim, we would find the defendant is not entitled to relief.  At trial,

8

Labette County Sheriff's Deputy Tim Holsinger testified that he went to the defendant's house on September 7, 1999 and talked with Souter-Autem.   He further testified that while he was at the residence, he discovered two books under a desk related to the manufacture of methamphetamine:  <u>Total Synthesis II</u> and <u>Secrets of Methamphetamine Manufacture</u>.   These books were introduced at trial as Exhibit Nos. 87 and 88.   During her testimony, Souter-Autem was asked about the books.   She said she "hadn't seen them until [Holsinger] found them."   The defendant claims this statement is perjurious because (1) Souter-Autem has stated in a statement to a private investigator in August 2004 that she may have taken the books from the fireplace mantle and placed them in the desk "because they did not belong on the mantle but she had no firm recollection of doing so"; and (2) Johnna Autem has stated in an affidavit that she had a conversation with Souter-Autem in May 2004 and was told that she had taken the books off the fireplace mantle after the defendant moved out and placed them in the desk drawer "before calling officer Holsinger."

Souter-Autem further testified she gave Deputy Holsinger scraps of paper on March 9, 2000.   These scraps of paper later became Exhibit No. 103.   Souter-Autem indicated that the scraps of paper had names of chemicals on them and they were in the defendant's handwriting.   Asked where in her residence she found the paper, Souter-Autem stated:   "If I remember right, it was in

9

the kitchen in one of the drawers and I was getting ready to paint the kitchen." The defendant claims this statement was perjurious because Souter-Autem allegedly told Johnna Autem in May 2004 that

> she had found only one scrap of paper in a kitchen drawer, which scrap of paper had on it a name and telephone number of a store. She said that the other scraps of paper were handed to her by a workman who was busy re-modeling the kitchen, and who had apparently found the scraps of paper when he removed a section of wall in order that he could remove the oven. Ms. Souter added that she was not present at the time that the scraps of paper were found, and indicated that this is what the workman had told her when he gave her the scraps.

A thorough review of the background for these contentions suggests that these claims do not establish perjury and do not warrant habeas relief because the new evidence is merely impeaching. The court is not convinced that the alleged statements made by Souter-Autem roughly three years after the trial of this matter and over four years after the incidents at issue demonstrate perjury. As time passes, memories fade and a person's perception of earlier events may change. The mere fact that Souter-Autem remembers something differently four years after an event occurred does not necessarily show that she lied during the trial.

Finally, even assuming that these statements somehow demonstrate perjury, the court is not persuaded that they would warrant relief for the defendant. Habeas relief is generally available where newly discovered evidence is uncovered which could not have reasonably been presented to the fact finder. See United

10

<u>States v. Barboa</u>, 777 F.2d 1420, 1423 (10th Cir. 1985).  "In order
to qualify as 'newly discovered,' such evidence must be more than
impeaching or cumulative; it must be material to the issues
involved; it must be such that it would probably produce an
acquittal; and a new trial is not warranted if the new evidence is
such that, with reasonable diligence, it could have been discovered
and produced at the original trial."  <u>United States v. Hughes</u>, 33
F.3d 1248, 1253 (10th Cir. 1994) (quotation omitted).  The evidence
offered by the defendant is, at best, merely impeaching.  There is
no question that the books and papers were found in the defendant's
residence.   The  defendant  has  suggested  through  the  newly
discovered evidence only that the items were not discovered as
Souter-Autem suggested at trial.  At most, this new evidence could
only be used to attack Souter-Autem's recollection of how she came
to obtain the items.  The evidence of the books and the pieces of
paper was used at trial to show the defendant's interest in and
knowledge of methamphetamine manufacturing.   Their  manner  of
discovery does not divest the evidence of its probative value.
Moreover, the evidence would certainly not produce an acquittal.
As correctly pointed out by the government, the outcome of the
trial did not rest on the presence of the books or the pieces of
paper, but on the testimony of Beery, who placed the defendant at
the scene of the methamphetamine cook and indicated that the
defendant agreed to provide some of the materials needed for the

cook in order to learn Beery's method of producing methamphetamine. In sum, the court does not find that these claims provide any basis for relief under § 2255.

VI.

A.

The court shall now turn to the remaining claims. The defendant essentially contends that it now has information from Rick Clifton, who was present the night of the methamphetamine manufacturing that led to the charges in this case, that the defendant was not involved. Clifton has indicated in a statement to a private investigator that he (1) was pressured by Deputy Holsinger to say that the defendant was involved in methamphetamine cooking with Beery, but declined to do so; (2) had no knowledge of the defendant's involvement with methamphetamine or Beery; and (3) would testify to these matters if he were called to do so.

The court shall first consider the defendant's claim that the government withheld <u>Brady</u> information from him. The defendant argues that the government withheld information that Clifton told Deputy Holsinger that he had no knowledge of any association between Beery and the defendant.

In order to establish a <u>Brady</u> violation, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material. <u>United States v. Combs</u>, 267 F.3d 1167, 1172 (10th Cir.

12

2001).

The government has indicated that Deputy Holsinger does not recall any interview with Clifton.  He has further indicated that had such an interview occurred, he would have made a report about it, and there are no reports of any such contact in law enforcement files.  Thus, the government suggests there is no Brady violation because there was no exculpatory evidence that existed.

For the purposes of this motion, the court shall assume that Clifton told Deputy Holsinger that he was unaware of any association between Beery and the defendant.  Even under this assumption, the court fails to find a Brady violation.  The court is not persuaded this evidence is material.  As this requirement is explained in Combs:

> The third part of a Brady claim "requires proof that the evidence was 'material either to guilt or to punishment.'"  Smith [v. Secretary of New Mexico Dept. of Corrections], 50 F.3d [801] at 826 [(10th Cir. 1995)] (quoting Brady, 373 U.S. at 87, 83 S.Ct. 1194).  "'A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.'"  Id. (quoting United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).  Evidence is therefore material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir.1994) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

267 F.3d at 1175-76.

Here, we are convinced there is no reasonable probability that

13

this evidence would have affected the outcome of the defendant's trial.  The mere fact that Clifton was unaware of any association between Beery and the defendant fails to show that the defendant was not involved in a conspiracy with Beery.  Clifton has no direct evidence that a conspiracy did not exist.  He did not state that Beery told him that he was not involved with the defendant. Rather, in the statement, Clifton only indicates that he "never heard Beery mention that he was associated with Mr. Autem in any way."  Clifton admits that his knowledge of Beery's activities was limited.  He stated that even though he frequently bought drugs from Beery, he "purposely avoided asking where Mr. Beery got them." He further stated:  "He suspected that Mr. Beery was 'cooking meth,' but never asked and Mr. Beery never offered that information."  The evidence noted by the defendant provides nothing to contradict the evidence offered by Beery at trial.  Thus, this evidence is simply insufficient to constitute material evidence. Since the evidence is not material, there is no <u>Brady</u> violation.

B.

The court next turns to defendant's ineffective assistance of counsel claim.  The defendant contends that his trial counsel was ineffective because he failed to locate, or attempt to locate, Clifton prior to trial.  The defendant again suggests only that Clifton would have testified that he was unaware of any association between Beery and the defendant.

14

"The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To obtain relief on an ineffective assistance of counsel claim, a defendant must satisfy a two-pronged test. First, he "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. To meet the first prong, a defendant must show that defense counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy. To meet the second prong, petitioner must show a reasonable probability that, but for the deficiencies in counsel's conduct, the result of the case would have been different. A probability is reasonable if it is sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." Cooks v. Ward, 165 F.3d 1283, 1292-93 (10th Cir. 1998), cert. denied, 120 S.Ct. 94 (1999); see also Davis v. Executive Director of Dept. of Corrections, 100 F.3d 750, 760 (10th Cir. 1996) (noting that court can proceed directly to prejudice without addressing performance), cert. denied, 520 U.S. 1215 (1997).

15

There is a strong presumption that counsel provided effective assistance of counsel, and the defendant has the burden of proof to overcome that presumption. United States v. Cronic, 466 U.S. 648, 658 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. The reasonableness of the counsel's performance must be evaluated at the time of the alleged error. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" Hatch v. State of Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir. 1983)), cert. denied, 517 U.S. 1235 (1996). Neither hindsight nor success is the measure of the reasonableness of counsel's challenged conduct. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), cert. denied, 522 U.S. 844 (1997).

The court can proceed directly to the prejudice prong. As explained above, the defendant must show a reasonable probability that, but for the deficiencies in counsel's conduct, the result of the case would have been different. The court is not persuaded that the evidence that the defendant now believes Clifton would have offered would have led to a different conclusion by the jury. As with the analysis of the Brady violation claim, the court fails to find that Clifton had any evidence to offer that contradicted Beery's testimony. As noted above, Clifton has now apparently

16

suggested to a private investigator that he was unaware of any association between Beery and the defendant.  The importance of this testimony is marginal at best.  The fact that Clifton was unaware of the association adds virtually nothing to the defendant's case.  The defense no doubt could have sought numerous witnesses to testify that they were unaware of any association between Beery and the defendant.  Secrecy among co-conspirators is well understood.  See United States v. Gallup, 812 F.2d 1271, 1280 (10th Cir. 1987) ("[S]ecrecy is the hallmark of a conspiracy."). Johnna Autem has also suggested in her affidavit that Clifton was present on the night that Beery was making methamphetamine in a building on the defendant's farm.  She fails to indicate, however, how he would testify concerning what he saw that night.  In his statement to the private investigator, Clifton makes no mention of the events that occurred at the outbuilding on defendant's farm that led to the charges in this case.  Even if he were to testify that he never saw the defendant on that night, this testimony would not contradict the testimony offered by Beery at trial.  Beery testified that only Johnna Autem was in the room when the defendant entered and watched him make methamphetamine for a short period of time.  In sum, the court is not persuaded that defendant has shown, by a reasonable probability, that the outcome of the trial would have been different if Clifton had testified.  Accordingly, we find no merit to defendant's claim of ineffective assistance of counsel.

VII.

In sum, the court finds no merit to any claims asserted by the

17

defendant.   The defendant's § 2255 motion must be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. # 108) be hereby denied.

**IT IS SO ORDERED.**

Dated this 30th day of January, 2006 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge